DETROIT AUTOMOBILE INTER-INSURANCE EXCHANGE v
DEPARTMENT OF TREASURY

THE TAUBMAN COMPANY, INC v DEPARTMENT OF TREASURY

Docket Nos. 65868, 65355. Submitted January 4, 1984, at Lansing.—
Decided November 6, 1984.

The Detroit Automobile Inter-Insurance Exchange and the Taub-
man Company, Inc., each purchased computer software de-
signed to meet its own needs. The Department of Treasury
assessed a use tax on the transactions. Each appealed to the
Tax Tribunal, which cancelled the assessment. The Department
of Treasury appealed each case and the appeals were consoli-
dated by the Court of Appeals. *Held:*

Customized computer software programs, designed specifi-
cally to fit a taxpayer's particular computer configurations, are
not tangible personal property subject to taxation under the
General Sales Tax Act or the Use Tax Act.

Affirmed.

TAXATION — SALES TAX — USE TAX — COMPUTER SOFTWARE PRO-
GRAMS — TANGIBLE PERSONAL PROPERTY.

Customized computer software programs, designed specifically to
fit a taxpayer's particular computer configurations, are not
tangible personal property subject to taxation under the Gen-
eral Sales Tax Act or the Use Tax Act (MCL 205.51 *et seq.,*
205.91 *et seq.;* MSA 7.521 *et seq.,* 7.555[1] *et seq.).*

*Daniel K. Converse,* for the Detroit Automobile
Inter-Insurance Exchange.

*Frank J. Kelley,* Attorney General, *Louis J.
Caruso,* Solicitor General, and *Richard R. Roesch*
and *Charles E. Liken,* Assistants Attorney Gen-
eral, for the Department of Treasury.

REFERENCES FOR POINTS IN HEADNOTE
68 Am Jur 2d, Sales and Use Taxes §§ 71, 99.
72 Am Jur 2d, State and Local Taxation § 264.5.
Computer software or printout transactions as subject to state sales.
or use tax. 91 ALR3d 282.

Before: BRONSON, P.J., and KELLY and R. S. HOF-FIUS,* JJ.

PER CURIAM. These are two separate appeals from determinations by the State Board of Tax Appeals that computer software is intangible property and, therefore, not subject to tax.

In the first case, *DAIIE v Dep't of Treasury* (Docket No. 65868), petitioner entered into three transactions with various computer program suppliers for software programs for their computer. The lessor of these programs brought them to petitioner's premises and transferred the program to tapes or discs. The Department of Treasury assessed use tax on the transaction for the transfer of tangible personal property.

In the second case (Docket No. 65355), Taubman purchased from Management Science America, Inc., computer software for a ledger system, payroll, accounts payable and receivable system and defendant assessed it for use tax in the amount of $2,328. The State Board of Tax Appeals determined that the assessment was improper and cancelled it. The Department of Treasury appealed and the parties stipulated to the facts. This case was held in abeyance until this Court decided *Maccabees Mutual Life Ins Co v Dep't of Treasury*, 122 Mich App 660; 332 NW2d 561 (1983), *lv den* 417 Mich 1100.15 (1983).

The sole question here involved is whether computer software is tangible personal property under the provisions of the General Sales Tax Act, MCL 205.51 *et seq.;* MSA 7.521 *et seq.,* and the Use Tax Act, MCL 205.91 *et seq.;* MSA 7.555(1) *et seq.* This requires an interpretation of the meaning of "use"

* Circuit judge, sitting on the Court of Appeals by assignment.

in the Use Tax Act or the meaning of "sale at retail" in the General Sales Tax Act.

Section 2(b) of the Use Tax Act provides:

" 'Use' means the exercise of any right or power over tangible personal property incident to the ownership of that property including transfer thereof in any transaction where possession is given." MCL 205.92(b); MSA 7.555(2)(b).

Section 1(b) of the General Sales Tax Act provides:

"(b) 'Sale at retail' means a transaction by which is transferred for consideration the ownership of tangible personal property, when the transfer is made in the ordinary course of the transferor's business and is made to the transferee for consumption or use, or for any other purpose than for resale * * *." MCL 205.51(1)(b); MSA 7.521(1)(b).

The Michigan Department of Treasury regulation defines tangible personal property as follows:

"Tangible personal property embraces all goods, wares, merchandise, products and commodities, all tangible things and substances which are dealt in, capable of being possesssed or exchanged." 1979 AC, R 205.5.

Other jurisdictions have come to varied results in interpretation of whether the software for computers is tangible or intangible property. See Anno: *Computer software or printout transactions as subject to state sales or use tax,* 91 ALR3d 282, for a discussion of the most recent cases.

Defendant argues that the purchase of software here involved is no different than buying a tape or record at a record store for use in a home or office where sales tax is routinely paid.

However, this Court in *Maccabees, supra,* distinguished the "canned program", such as TV games, albums and cassette tapes from programs such as involved in the instant cases where customized programs were developed and required engineering skills, expertise and expensive services in development. The Court found that this was "a personalized service customized to fit plaintiff's particular computer configurations". 122 Mich App 666. The Court stated:

"Customized computer software programs should be distinguished from canned software programs, *e.g.,* TV games, albums, and cassette tapes, because the latter are all end products in themselves. The focus of the instant transaction is on the personalized service of the software vendors, an intangibles transaction." 122 Mich App 666.

The Court found that since the system had to be tailored to the specific use there involved, it was not taxable under the sales or use tax acts. The Court stated:

"The [lower] court's opinion is also supported by case law from other jurisdictions. See *Dist of Columbia v Universal Computer Associates, Inc,* 151 US App DC 30; 465 F2d 615 (1972); *Commerce Union Bank v Tidwell,* 538 SW2d 405 (Tenn, 1976), where the courts held that computer software is intangible personal property. See generally, *University Microfilms v Scio Twp,* 76 Mich App 616, 619-620; 257 NW2d 265 (1977), *lv den* 402 Mich 880 (1978), where this Court distinguished microfilms from computer software, finding the former to be tangible personal property subject to personal property taxation." 122 Mich App 665-666.

The sales and use tax acts were adopted before the introduction of computers. Consequently, the

law relative thereto was developed through cases such as *Maccabees, supra.*

Originally, computers were sold as a package unit with computer and software. Recently, there has been developed customized computer software which is adapted to the individual business or computer. It could be put on tapes or an employee could go to the premises and program the computer in which event there would be no tape and no possible tax.

*Maccabees, supra,* relied upon *University Microfilms v Scio Twp,* 76 Mich App 616; 257 NW2d 265 (1977), *lv den* 402 Mich 880 (1978), where the Court held that plaintiff's master negative microfilm copies of printed materials, rare books, periodicals, and other sources were personal property and, therefore, subject to assessment as such personal property. The Court stated:

> "We agree with plaintiff that its master negatives are similar to abstracts and computer 'software' in that all contain information, but we disagree that that is what controls the determination of intangibility. The value of an abstract is personal, that is, it is dependent on the work of the one who controls the information. If it is left to go out of date or is inaccurate, it loses its value. In *Perry,* our Supreme Court compared abstracts to surveyor's notes, and author's memoranda and a druggist's recipes. *Perry v Big Rapids,* [67 Mich 146, 147; 34 NW 530 (1887)]. *Similarly, the value of computer 'software' is not in the card or disc itself, but rather in the synthesization, compilation, organization and creation of the computer programs contained therein.* * * * The value is personal. *Payment is made for the service and the expert knowledge."* 76 Mich App 619-620 (emphasis added).

The extrinsic value of the software here involved is nominal compared to the organization, creation,

knowledge, and skill of the information furnished thereon.

*Maccabees, supra,* therefore, found a distinction between the customized computer software and the routine copies of records, tapes, TV games, and other "canned" programs.

Until the Legislature adopts amendments to the sales and use tax acts, this Court feels bound to follow *Maccabees, supra.*

The orders of the Michigan State Board of Tax Appeals are therefore affirmed.

Affirmed.